ANNETTE KINGSLAND ZIEGLER, J.
¶ 52. {concurring). I concur and join the majority opinion's discussion concerning termination which is consistent with this concurrence and the majority's conclusion *395 that the question of when Beidel was terminated should proceed before the trial court. I agree that this case should be remanded because the facts need development as to when a "termination" occurred under the terms of the Stock Repurchase Agreement such that the proper remedy can be determined. Here, the remedy hinges upon when the termination occurred. Based on the record before the court, it is unclear whether Beidel is entitled to the stipulated price of $1,600 per share or the lower fair market value price.
¶ 53. As this case is a matter of contract interpretation, I repeat the relevant contract language. Section 6 of the Stock Repurchase Agreement governs when a shareholder who is terminated without cause is entitled to the stipulated stock price:
Shareholder's Put Option. Upon the termination of a Shareholder's employment with Sideline without Cause (as defined in section 7(b) below), the terminated Shareholder shall have a continuing option to sell all or any part of the Stock owned by him, and upon exercise of such option, Sideline shall have the obligation to purchase all of Shareholder's Stock so elected for sale by such Shareholder, at the price and on the terms provided in sections 8 and 9 below.... The terminated Shareholder shall exercise such option by providing 30 day[s'] prior written notice to Sideline of his decision to sell his Stock.
Sideline does not allege that Beidel was terminated for cause. Its brief states that "Beidel was terminated as an officer and employee."
¶ 54. Section 8 of the contract governs the initial per share price and how the price would be determined thereafter, including an annual review of the price. "Upon such review, the Shareholders and Sideline shall either stipulate by an instrument in writing that there *396 is no change in the price last stipulated or agree upon a new Purchase Price by an instrument in writing signed by them and Sideline . ..." If the parties did not negotiate a new price, the prior year's price continued for one more year, such that a stipulated price could stay in effect for a maximum of two years. If the parties still did not negotiate a price two years after the last stipulated price, the price of shares that were sold "shall be the fair market value of the Stock as determined by an appraiser selected by Sideline." The most recent stipulated price of $1,600 per share was entered into on March 6, 2007, and it was set to expire on March 6, 2009.
¶ 55. The threshold question that the circuit court must consider is whether Beidel was "terminated" before March 6, 2009, as that term is used in the contract. If he was, then he is entitled to the stipulated price of $1,600 per share. If he was not, then he is entitled to a per share price determined by the fair market value.[1]
¶ 56. The goal of contract interpretation is to ascertain the intent of the parties. Kernz v. J.L. French Corp., 2003 WI App 140, ¶ 9, 266 Wis. 2d 124, 667 N.W.2d 751. When the contract is plain and unambiguous, "we will construe the contract as it stands." Id. (citation omitted). Under the contract language and its call for specific performance as the remedy, when Beidel was terminated is the central issue.
¶ 57. The Stock Repurchase Agreement does not define "termination." Black's Law Dictionary defines "termination" as "[t]he act of ending something." Black's Law Dictionary 1482 (7th ed. 1999). Another dictionary defines "termination" as "[t]he act of terminating or the *397 condition of being terminated." The American Heritage Dictionary of the English Language 1852 (3d ed. 1992).
¶ 58. Sideline argues that Beidel was formally terminated by the board of directors on September 17, 2009. Beidel argues that he was terminated before the March 6, 2009, expiration of the stipulated price. He points to the fact that in October 2008, Sideline informed him that it intended to fire him and in January 2009, transitioned his duties to other employees. See majority op., ¶ 17. On January 20, 2009, pursuant to Section 6 of the contract, Beidel submitted written notice purportedly to exercise his put option. Id.
¶ 59. One reasonable interpretation of the word "termination" in the Stock Repurchase Agreement is a complete separation or a complete end to the shareholder's employment. Another reasonable interpretation of "termination" is an act evidencing an employer's intent to end the shareholder's employment. In this case, Sideline reduced Beidel's employment duties significantly and admitted to running out the clock on the stipulated price. Whether that reduction in duties constitutes a termination under the terms of the agreement is a question of fact that is not resolved by the language of the contract or by the record before the court. Cf. Loos v. George Walter Brewing Co., 145 Wis. 1, 4, 129 N.W. 645 (1911) (stating that when employer does not permit employee to perform "the substantial or principal service he agreed to perform" and directs the employee to perform other tasks, an employee who refuses to complete new tasks "may treat such refusal and direction as a discharge"); 1A Steven Plitt, Daniel Maldonada & Joshua D. Rogers, Couch on Insurance § 8:68 (3d ed. 2010) ("The employee's performance of administrative functions in relation to the insured does not conclusively extend the employment."). The word *398 "termination" in the Stock Repurchase Agreement is subject to more than one reasonable interpretation and the facts in the record do not conclusively answer what the parties intended by "termination." Justice Gable-man asserts that the parties stipulated to the time period of the termination. See dissent, ¶ 67 n.2. The record in that regard is not crystal clear because the record does not contain a copy of the actual stipulation.[2] Therefore, I would remand this case for a hearing before the circuit court to determine when the termination occurred.
¶ 60. The majority opinion remands this case for "the circuit court's determination where the bulk of the equities lie, including an evaluation of what the parties intended when they agreed to the stock re-purchase agreement, and whether it should grant specific performance as Beidel requested." Majority op., ¶ 51. The majority's approach of balancing the equities should not be read to preclude summary judgment when applying the terms of the contract.
¶ 61. I agree that unnecessarily injecting good faith and fair dealing into a contract, especially when the terms of the contract are clear, is improper. See dissent, ¶ 69. Indeed, the Seventh Circuit is rightly wary of using the doctrine of good faith and fair dealing to overcome the rights and responsibilities set forth in a *399 contract. See id., ¶ 72 (quoting Mkt. St. Assocs. Ltd. P'ship v. Frey, 941 F.2d 588, 593, 595 (7th Cir. 1991) ("[I]t is unlikely that Wisconsin wishes, in the name of good faith, to make every contract signatory his brother's keeper. ... It would be quixotic as well as presumptuous forjudges to undertake through contract law to raise the ethical standards of the nation's business people.")).
¶ 62. Here, the critical contract term, "termination," is not fully developed within the facts of this case, the meaning of which must be determined on remand. Therefore, I would remand for a circuit court hearing to determine when the termination occurred. If the fact finder concludes Beidel was not "terminated" prior to March 6, 2009, he will receive only the fair market value of his shares. If the fact-finder's decision is to the contrary, the contract sets the per share price he is to be paid.
¶ 63. For the foregoing reasons, I respectfully concur.
¶ 64. I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this concurrence.

 The majority opinion agrees this is a question to be resolved on remand. See majority op., ¶¶ 44, 45, 46 n.24.

 Not only does the record not contain a firsthand copy of the actual stipulation, but the secondhand information we do have in the record is unclear as to the nature of the stipulation. The attorneys give two different portrayals of what was stipulated. Sideline's attorney stated that "we've had a concession by the plaintiff that there was no actual termination." Beidel's attorney stated that "we did agree and stipulate that we would not pursue that," meaning the actual termination claim. As I do not believe the record before this court conclusively resolves whether Beidel was terminated under the terms of the contract, I would remand.